Good afternoon, your Honors. I am pleased to represent the Appellant Relator, Dr Tom Zizek, today, who is here in the courtroom. In this case the question before the court is whether or not the public disclosure bar of the false claims act applies, and whether or not Dr. Zizek was an original source. Your Honors, Dr. Zizek filed this complaint in December 2009, alleging violations by two defendants who were qualified independent contractors or QICs, Q2A Administrators and River Trusts. They were part of the Medicare appeals process for the payment of durable medical equipment. The claim is simple. As QICs, the defendants had a duty and were required to perform under contract with the government certain medical investigations and reviews as part of their duties as a federal contractor in the Medicare appeals process, and they did not perform these reviews as part of a scheme to push through the claims and appeals. One of the problems we have here is, now this was thrown out on a motion to dismiss for lack of jurisdiction. The complaint does not have a lot of information as to exactly what Dr. Zizek's role was in any of this. It says he has first-hand knowledge because he was involved, but there's not a whole lot from which we can derive a sensible conclusion, at least as to the second aspect of the matter that is direct and independent connection that would give him an out, even if there were public disclosure. Did you seek to amend in the district court? We sought to amend at the time of the argument, and we never filed an actual motion to amend. We requested it as part of our response to the motion to dismiss, and I asked for it at the time of oral argument. We felt like the complaint would have survived a 9B motion if Judge Shapiro had gotten that far, but we never got to that stage because she dismissed I mean, because we really can't tell. Was he part and parcel of these procedures where the, you call them KICs? What do you call them? QUICs. QUICs. QUICs would, you know, what is this procedure? The QUICs would consult with BioNCare and say, you know, I need to review some more records, or was this a totally distinct review process whereby there was no interaction, so he wasn't, I mean, he said he has first-hand knowledge, but could you have shown that he actually interacted with these people while they were doing this? He did not, Your Honor. When Dr. Zizek would have become involved was, the way this process works, the QUICs are the third step in a five-step process. And I know this isn't part of the record, but that's my problem. Well, Your Honor, I think, I believe that the complaint does explain the five-step process and where Dr. Zizek became involved, and what I believe Dr. Zizek did was, there were two places where he became involved, and it says it in paragraphs, I believe, 96 and 114, where in the appeals process, both before and after the QUIC review, he became involved as the President and CEO of BioNCare, who had had these claims assigned to them, the medical provider for the BioNCare piece of equipment. I know that, but he says he has first-hand knowledge, but how, what, how was he involved? Well, when the claim was assigned... Was he there in that process? Was he involved in that process? He was involved in that process on behalf of the BioNCare, who had, who was the medical provider, had the claims assigned to them from the provider. So at the first point, Dr. Zizek would review the claim to decide whether it should even be appealed up to the QUIC. He would then look at it, and in fact, he did not even, he, in that review, did not review a single claim up to the QUIC. But once he appealed it, it was, the process wasn't something he was privy to, was it? Yes, he was involved in the QUIC, well, he was not involved in the QUIC process. After the QUIC would have denied the claim, or not given enough money, or whatever they did, if it was then being appealed to the ALJ, again, Dr. Zizek would become involved. He would review the file that the QUIC, the two defendants, would have presented to the, would have gone up to the ALJ, and then he would have helped the BioNCare format their claim for the ALJ. Mr. McCormick, but your problem is, as the District Court found, and as I'm struggling with here, is, whether it's the complaint that we have in front of us, or even if you had been granted leave to amend your complaint, how do you get by the public disclosure bar? I mean, that's your hurdle. I mean, that's where Judge Shapiro granted the jurisdictional dismissal. How do you get by that? Well, Your Honor, in two steps of the public disclosure bar, Your Honor's asked for a supplemental pleading on the ALJ, and how the process works. We believe that the process was not publicly disclosed as a normal civil litigation. There's very limited access to these hearings. There's very limited access to the way that you would have seen this public, this, the claim that Dr. Zizek eventually discovered, learned about, and investigated, that no one else in this process ever saw or discovered. But before that, you have the Almay litigation, and the discovery there that this review process was not being followed. And you only have one quick every year, so it's pretty easy to figure out who, who's falling down on this review process. So, isn't that enough to have been a public disclosure that, separate and apart from whether this was public or private? Your Honor, I think the distinction in the Almay case is, first of all, that the, the defendants rely on, most of which are after we filed our complaint. But the only one before the complaint was based on information that Dr. Zizek had already presented. It has, it was, he was the original source for that information in both cases, which would get us to, even if it was a public disclosure, Dr. Zizek would be the source. But I think the Almay disclosure, if you want to call it that, or the information that came out in the Almay case, didn't bring in the elements of fraud. It only brought in the fact that there was something missing. And it became intertwined with a number of other things that was complained about in the Almay case. The... Isn't your assertion that they present they being quicks billing for payment by the federal government, and they're not doing what they're supposed to do. If the Almay litigation involves allegations that they're not doing what they're supposed to do, which it does, right? I mean, Almay says the allegation is being made that they're not doing position reviews. If that's in the Almay litigation, why isn't that disclosing effectively everything that Mr. Zizek is disclosing, which is, hey, they're not doing position reviews. Well, because... They're taking money for not doing it. It's fraudulent. Well, I think there's two things, Your Honor. I think the first thing is that the statements in the Almay litigation were... They were intertwined or mixed in with a number of different other statements. It was not... That was not the only thing that they brought forward. I think the other thing is there's no inference of fraud there. It was just... They didn't do it. It was only Dr. Zizek who was able to put together that. How is there not an inference? If I understand the Dunleavy algebraic formula, X plus Y equals Z, and our own precedent in Atkinson, if a prior public disclosure reveals either X plus Y, that is, the misrepresented facts and the true facts, or Z, the inference of fraud, if either one of those things, X plus Y or Z, is publicly disclosed, that's enough for public disclosure. Isn't that right? Well, I would think, Your Honor, if you look at Dunleavy, I think Judge Roth takes it another step. I think she says that the language from the False Claims Act, the publicly disclosed allegations or transactions, need something more. You need anything besides information. Let me read you from Atkinson. If either Z, fraud, or both X, misrepresented facts, and Y, true facts, are disclosed by way of a listed source, then a realtor is barred from bringing suit unless he's an original source. So that sounds to me pretty straightforward. If you've got X plus Y, misrepresented facts plus true facts, or Z, then you've got disclosure. So what is missing from ALMI? ALMI sounds like people saying, hey, they're not doing position reviews. They're supposed to be doing position reviews. Why isn't that X plus Y? Or maybe I've just got what ALMI says wrong. Well, I think what ALMI says is the X plus Y you're putting together as simple statements is not that simple. I think the ALMI litigation involves so many other issues and so many hundreds of bionic hair claims that the point of X plus Y is not as clear as it would be to create a public disclosure in that litigation. I'm just going to quote this to you from ALMI. This is from the district court's opinion. Plaintiff gets no traction. This is on page 333, I think, of the district court's opinion. Plaintiff gets no traction with his claim that the QUICS failed to incorporate the medical review required under the Medicare regulations. I'm sure there's a lot of other stuff being said in ALMI, but doesn't that indicate that in the ALMI litigation there was an assertion that there's supposed to be medical review and it's not happening? That assertion was made in ALMI. I don't think, though, it was clear enough from the rest of the ALMI litigation to have given another party that was looking at this the ability to figure out that there was a fraud or a scheme behind it to do that. Let's assume, and let's give you, you know, you reserve five minutes for rebuttal. I'm just going to one aspect. Now, I would assume you would say, well, even if ALMI was a public disclosure, you're contending he is a direct and independent source. I am, Your Honor. I believe Dr. Zizek is an original source. Oh, I mean, original source. Judge Shapiro said that there's an affidavit. And so really that is, you know, the affidavit of the person who was with the quick is the source of information for Dr. Zizek. Well, first of all, the affidavit only appeals, only applies to the one defendant, if you were to believe Judge Shapiro, which would have left the other quick in the part in the case, because the affidavit by Wayne Van Halen was as an employee of only one of the quicks. But Dr. Zizek had already developed and come up with the, and discovered this through his review and analysis of all the claims from both the quicks. Mr. Van Halen's affidavit, which came to Dr. Zizek after he had discovered this, only confirmed what he already knew and confirmed that there was a widespread action or a scheme or plan by the companies not to do the quick reviews that they were supposed to be doing. Can I ask as a factual matter, how did the Van Halen affidavit come to you? Is that something that Dr. Zizek did? He found Mr. Van Halen, he worked with him, or some other? In working with and doing his review of these claims before they reached the quick and after they came through the quick before the ALJ, Dr. Zizek had an enormous amount of contact with employees of both companies. Mr. Van Halen left the company and contacted Dr. Zizek and the attorneys for Bionicare after the fact and told them exactly what Dr. Zizek had been saying. More to bolster what he already knew you were saying? Yes, I am, Your Honor. All right, we'll hear from you on rebuttal. Thank you. Thank you, Your Honor. Thank you. May it please the Court, Gary Shockley of the Tennessee Bar, here today on behalf of the Defendant Appellee River Trust Solutions. I'm going to address the public disclosure issue. During the first eight minutes of the appellee's time, Mr. DeVecchio for Q2A will address the alternative grounds under Rule 9 and I'm sure will be happy to address any additional questions the Court has on public disclosure. As the Court has pointed out, Judge Shapiro found not one but two public disclosures here that invoked the public disclosure bar. The first, the simplest, the clearest one on the record, is of course the Almy v. Sebelius litigation. As the Judge pointed out in her opinion and as Judge Jordan pointed out in his question, in the motion for summary judgment in that case, the bankruptcy trustee, it's at paragraph 66, is her statement of material facts, said, quote, That's the X element of Dr. Zizek's complaint. She goes on to say, None of the claims in the other cases have any evidence of nurse or physician review. That's the Y element of Dr. Zizek's complaint. Two questions for you on that score. Mr. Shockley, if I might first is, that Court said, given that, that's not enough to raise any inference of fraud, so why would it be enough to establish a public disclosure that should put people on notice that there's fraud? Because as Your Honor pointed out, in Dunleavy and in Atkinson, and again in Peronich, in Judge Rendell's opinion, what this Court has said is, either X and Y or Z. You don't have to show both of those. Either the transactions, in the language of the statute, which is X and Y, or allegations, which is Z, are sufficient to raise the jurisdictional bar. What Dunleavy has is X plus Y. So, which leads to my second question, that is, is X plus Y there? Your Honor, the Court seemed to say there's nothing that requires a quick to disclose that they've done physician review. Therefore, the fact that they don't disclose that they've done physician review doesn't mean it's not significant. It's not legally significant. In other words, I took the Court to be saying that the bankruptcy trustee didn't say review isn't happening, only that it's not disclosed that review is happening. Am I right about what the Court said? And if I am, does that have meaningful legal consequences? You are right, and I don't believe it has meaningful legal consequences in this case. What the Court said is, you look through the files, you didn't see evidence of review, I don't see anything that requires them to have evidence of the review as opposed to doing it. But what the trustee said in her motion was exactly what Dr. Zizek says here. They're required to do it, and they're not doing it. That's the X plus Y. So, in effect, the Court was addressing a separate question and saying, even if what the trustee says is true, it doesn't affect our judicial review under the APA. But that allegation, the transactions, from section 66... Does the bankruptcy trustee say they're not doing it? The bankruptcy trustee says, I certainly read it as saying, none of the claims have any evidence of nurse or physician review. In fact, the CWC that originally reviewed the claims subjected none of the claims to physician or nurse review. I think if you read paragraph 66 of the Statement of Material Facts, October 30th of 2009, and compare that with the operative allegations in Dr. Zizek's complaint, filed in December of that year, they match up. And that's the X plus Y elements. Assuming you have that bar, why do we not have the exception here? And why was Judge Shapiro wrong to jump to the conclusion that unless Zizek had all the information that Van Halen had, he wasn't an original source? Your Honor, I think there are three reasons that Dr. Zizek is not an original source. His knowledge is not direct, which is required by the statute. Well, he says in his complaint that he has first-hand knowledge. He says he has first-hand knowledge from looking at the ALJ hearing records. Well, no, he doesn't say that. He says from the appeals, and according to your colleague, he has acquired first-hand knowledge through the appeals process of claims pertaining that were arbitrarily not routinely performed. How do we not know that he was in that process and privy to this information? It doesn't matter, Your Honor. That's not direct. As this Court said in Prudential, the fact that you learn of something in litigation through something produced in discovery keeps you from having direct knowledge, that first-hand knowledge. So it's not direct. The interesting thing here is the fraud is alleged to be happening in a litigation context. So it's not like learning through litigation discovery having to do with some other fraud. This could be first-hand because that's where the fraud is happening. They're getting paid to do the appeals review. Not at the ALJ stage, it's not. What Dr. Zizek says is that through, as counsel just described, in that third and fourth stage, he says he learned of it. The fraud, the alleged fraud, is happening at the second stage where counsel said he is not involved in the QUIC reconsideration process. All right, run that by me again. The QUICs operate at the second stage. Okay. If dissatisfied with that second stage, the third stage is the ALJ hearing. But isn't the appeals process the second stage? No. No, it's a five-step appeals process. The QUICs operate only at the second stage. But isn't the QUIC second stage an appeal? It is an appeal. Okay. It is not the appeal where Dr. Zizek alleged he learned. It's at the ALJ hearing and the Medicare Appeals Council hearing stage when he alleges that he learned of these. All right, well, I'll let your colleague address that. All right, and the third problem, the knowledge is not direct, the knowledge is not independent because it's based on the prior public disclosure in the administrative hearings, and there's no evidence in this record that it was voluntarily disclosed to the government prior to filing. All three of those are requirements here. Are the administrative hearings public hearings? We asked for some follow-up memorandum from you. Maybe you could expand on that a little bit and describe why these reviews should be viewed as public administrative hearings. Yes, Your Honor. At least two reasons. Number one, there are a number of parties who participate in the hearings who are members of the public. The beneficiary participates in the hearing. An assignee provider can participate in the hearing. A provider responsible for a refund can participate in the hearing. But that happens in cases where, you know, we might have matters under seal and there are hearings and things that happen. We might not call them public disclosures. But if a member of the public has access to them, the cases of this Court say, that's a public disclosure. It's a distinction the Court drew in the Mystic case between disclosure and dissemination. What's required is disclosure to the public, not dissemination, but disclosure to the public. But this would only be disclosed through a FOIA request, wouldn't it? That's the second way it could be disclosed, through a FOIA request under which protected health information would be redacted. But you wouldn't need the protected health information to reach the conclusion here whether the contractor was doing the review required or not. Well, but wouldn't they review all of the record review and the physician review? They would. So you couldn't access that through FOIA? You could. Once the individually identifiable health information was redacted. That's what Section 552B of FOIA would require. It's what the preamble to the Privacy Rule says is the appropriate approach. I notice my time's up, and I'll defer to Mr. DiVecchio on any additional questions the Court has. Thank you. Your Honor, it's Jay DiVecchio on behalf of Q2 Administrators. I will be happy to answer your questions, but I would like to make a transition, if I might, to the alternate grounds here. Public disclosure has been the focus, but we have made the point that if you conclude that public disclosure  you should still sustain the dismissal because one can lose the discretion to make a public disclosure. I would like to take a look at this complaint on its face and recognize that it doesn't meet the requirements of this Court with respect to the sort of specificity that's necessary regarding 9B, and it certainly doesn't meet Twan-Lee-Rickball. And I can demonstrate that rather simply, I think, and I'd like the opportunity to do it. If you take a look at the two counts in here, Count 4 is a count under 3729A2. 3729A2 is different than A1. It requires a specific false record or false statement, and it requires the pleading of that in a way that's meaningful under the court's decision, the Twan-Lee decision and this Court's decisions. If you look at that complaint, there are only five paragraphs in this entire complaint that address the issue that's being alleged in Count 4. There's 161 and 162. If you take the time after this discussion to look at them, you'll see that 161 is a perfectly formulaic recitation of 3729A2. That is that the defendants here may have used or caused to be made or used false record or statement. What false record or statement? We don't know. Don't you know? No. From the rest of the complaint? No, sir. Don't you know that the assertion is you're submitting for payment invoices and implicit in the invoice is that you have performed in accordance with the regulation and you haven't? Well, that's a different count. That's Count 3 with respect to the A1 violation. Let's focus on Count 4, because Count 4 you could and should dismiss out of hand. What does he say in Count 4? He doesn't say that in Count 4. He says this, the U.S. would rely on such false statements or records in conjunction with award of the quick contracts. He's not talking about performance under the quick contracts. He's not talking about submitting bills under the quick contracts. There is no statement anywhere in this complaint of what that false statement or false record is, except in the context of the conjunction with an award, and there's only two other places. It says award of contracts and continuous payments there under. Well, let's take a look at that. Where are the continuous payments? Where is the statement of what the continuous payments are that satisfies some indicia of plausibility in this complaint? There is not one cited. The only paragraphs where he addresses this with respect to Count 4 are paragraphs 127 through 129, and there those are nothing more than recitations of the elements necessary to satisfy the cases. Mr. DeVecchio, if we even get to the point that you're covering, shouldn't we remand this to the district court for him? Well, I can understand the impulse, Your Honor, but I think that Not so much an impulse, it's what we typically do. Well, the question is, just because you can do something, whether you should, you know, like my dad used to say. The question is, you have the authority, certainly, to resolve this case, and the question is, is it in the best interest of judicial economy to do that here when all you have to do is look at five paragraphs, and you look at those five paragraphs and you see there is nothing other than a recitation of the elements. I invite you to look at paragraphs 161, 163, and 127 through 129. There's not one word of substantiation, not a participle of anything that says what the false statement was or any indication that would allow anybody to go pursue the defense of that case that meets the standards that have been articulated by this court for 9B and by the Supreme Court. Since we're all here talking about it, doesn't it meet the standards of Rule 8, even under Iqbal? I don't think so. We're all talking about the theory here. It's been that your client is alleged to have falsely stated or at least implicitly stated, we're doing the quick reviews according to the regs, and they're not. That's the fraud. All right. Let me make that transition for you, then, because that's a different account of the complaint. Well, I take it that it's part of this account, too, both because of the specific language it says for the continuing services and supposedly because this underlies the theory that we got the quick contract or applied for it by saying we were doing what we were supposed to do. Yeah. But in any event, if you know what they're talking about, and indeed you know what they're talking about so thoroughly that you can say there's been a prior public disclosure of it, which is the private court of jurisdiction, how is it that you can say at the same time, but were mystified about what they mean for purposes of 12D6? Because I think Promley doesn't permit it, and Iqbal doesn't permit it. In that decision, Doesn't that seem like a very puzzling problem? No, I don't think so. How about the affidavit of Van Halen? Let me address Van Halen in a minute, but let me get to your question. It's clear that under Promley and Iqbal that if there are another set of facts that meet the conditions of the pleading that provide for an innocent explanation, then you can't infer any wrongdoing. That's what he's trying to do here. If you take the entire complaint and you look at what he's saying is wrong here, there's three or four things he's saying. Some of these are derivative, Judge Rundell, from the Van Halen affidavit. One, he's saying that there is no evidence in this record that these reviews were done. I submit that under Promley and Iqbal you can't draw an inference of wrongdoing when Almy says there's no requirement, there's no regulatory requirement to have that. That's an indication of nothing fraudulent. What else is he saying? He's saying clinicians didn't do the review. Where in the regulation do you find the word clinicians? There's nothing in the regulations about that. If he's saying that, well, you can infer that clinicians mean physicians, he's not saying physicians aren't doing all the reviews. Rather, he is saying that physicians aren't doing all the reviews. He's not identifying any subset that they're supposed to do. But you don't see any conflict between the position that your co-counsel is taking, that this disclosure in public was thorough enough that it meets exactly what Dr. Zizek was saying, and therefore for 12b-1 we all know what's being talked about, throw it out for jurisdiction, and then saying under 12b-6 it doesn't meet a notice pleading statement. Well, the point is that under Almy they were saying in this record, the allegation was in this record, there is no evidence of the review being done, and therefore we conclude the review wasn't done, and that's bad. So it's the absence of the review that's the principal allegation in Almy, which is the exact same allegation that he's making here. I don't find anything inconsistent at all. Your co-counsel just said it's not just that, and he quoted from the bankruptcy trustee's statement that they are not doing it. Not just that they didn't disclose whether they were doing it, but that they aren't doing it. But what's the evidence that they weren't doing it, that they were arguing to the Almy court? They didn't have any affirmative evidence that they weren't doing it, other than the absence of the record of the physicians having done the review. It's the absence of the record that is the sole and entire basis for the conclusion in Almy, and it's the sole and entire basis for their allegation here, except for the additional things that Van Halen says, none of which are a regulatory violation. Read them. He's saying you didn't have clinicians. No requirement to have clinicians. How can it be a false claim if there's no regulatory requirement? You had a subcontractor do the review. Where does it say I can't have a subcontractor do a review? All federal contractors use subcontractors. How can that be a violation of the regulation, and how can it therefore draw an inference of fraud? You had nurses doing an initial review, but not the final review. Where in the regulation does it say I have to have an initial and final review? It says a review. Certainly a nurse is an appropriate health care provider. So none of what he has alleged anywhere in this complaint is evidence of anything wrong under the contractor regulation. So no matter how you look at it, you can't have a circumstance where there has been a violation or an inference under Twomley, Iqbal, and this Court's decisions with respect to 9b that he's pled a violation. It isn't there. Thank you. Thank you. Mr. McCormick. As respectfully, Mr. DeVecchio says that he and his client can't defend against this case. Almost 100 pages of appellant paperwork back, as well as an understanding of the case, is clear from the entire complaint, not taking paragraph by paragraph by paragraph. I think that there's no question that the case is certainly defendable against. One other thing that has to do with a case, a whistleblower or a key to him case, is the procedure. And as your honors probably know,  there's something called a disclosure statement or a relator statement that is usually, certainly it's required by the statute and filed simultaneously with the complaint. Usually that contains the level of detail that would be included in a normal civil complaint. A relator statement was never brought into this litigation, but if we had been given the chance to amend, it certainly would have been encompassed into the complaint and given much, much more detail. Can you address what Mr. Shockley said with respect to the original source issue, that you did not give the United States an opportunity before filing, that Dr. Zizek was at step four when he was privy to the process, but what happened here with the review process was at step two, so that he really can't be an original source? Your honors, to the first issue, Judge Shapiro asked the same question. We had spoken with the U.S. Attorney's Office on at least two different occasions. It was not in the complaint, but Judge Shapiro mentions in her opinion, I believe, that she gave us a week to go back and supplement the record. We sent her a letter. I have correspondence back and forth with the U.S. Attorney's Office here in Philadelphia in the Eastern District, so she certainly had access to that. The defendants know that. They continue to make a claim of it. If we needed to amend the complaint and put that in the complaint, but that's not an issue. The U.S. Attorneys know about it. Hold on just a second, because I'm not sure I understood that. She knew what? Your honor, Judge Shapiro knew before she issued her opinion. She gave us a week, I believe, or 10 days after the oral argument to give her proof that we had spoken to the U.S. Attorney's Office and the government and made a public disclosure. Okay, I'm sorry. What as to the point of your client became aware by reviewing things at Stage 3 and maybe Stage 4 when the alleged fraudulent behavior was occurring at Stage 3? I'm going to get to that, your honor. Your honor, the stages are, and I don't want to belabor the point, the DME, Medicare Administrative Contractors, are the suppliers of DME, are the first stage for reimbursement. If a provider refuses to pay, then you can ask for a redetermination by that DMACC. Then it goes up. If that is denied again, then the Medicare, the beneficiary can apply to the QIC. So the QIC is the second step in the process. And it is an appeal in that it's a reconsideration. After that, there is a... Are you saying that the allegation in the complaint that he was privy based on the appeals process, that he was privy at Stage 2? He was privy before Stage 2. He was privy even before it went to the QIC because when... Well, he couldn't be privy before. I mean, privy to this information. He was privy. Well, what I want to say, your honor, is he had direct knowledge of, not of the fraud of the scheme not to do the medical reviews, but he had direct knowledge of the process and of the Bionicare claims determination. He looked at... But he didn't know the fraud. No, that would have come after the QIC review, before the ALJ. That's the issue. It's not that he knew the reimbursement process. He knew what the substance of his company's claims were. That's understood. Right. But he didn't know of this fraud until at least the ALJ review. Until after the QIC review before the ALJ. Right. And that step between the two. That's where he learned about it. Right. He learned about the fraud, but he knew about the claims determination process before that. Yeah. Okay. But the claims determination process isn't what this suits about. It is not, your honor. But I think, unlike some of the other cases that we've looked at, this is not something that Dr. Zizek learned about simply from being involved in this litigation. He was involved in the claims determination process well before the QIC and the ALJ. So you're saying he should get some credit for his expertise. I would think he would be. Exactly, your honor. For direct involvement, if not. Excuse me? In Wilkins, didn't we say, you know, there was the assertion that, hey, I understand the court functioning, et cetera. If I'm remembering the case right. And that I ought to get some credit for, for understanding this and bringing that to the table. And we said, no. Your specialized knowledge doesn't give you any added boost here. Your honor, I haven't made that argument that looking at the blueprints, and you have a specialized engineering knowledge to look at the blueprints. I do believe Dr. Zizek has a specialized knowledge of looking at these processes that would have shown him no medical review that others may not have realized. But what my argument is going to is the fact that he knew how the claims process worked before he began to look at the QIC review to look for the medical review. And I believe that the defendant's argument is that he simply learned about the process. He may have learned about the fraud at the time after the QIC, but he certainly had been involved in the entire process well before that. He's not like a lawyer coming into a litigation and finding a memo and discovery. He had been involved well before that. But does that get him there? Or does he not have to have been an original source privy to witnessing what was going on, like Van Halen was? I believe, Your Honor, under the precedent in the Third Circuit, it is enough to get him there. I think that learning about it, wherever you learn about it, you don't have to be an insider anymore. You don't have to be that person who actually does the off-label marketing, or you don't have to be the person who, like Van Halen. If you learn about it through a process that is not a public disclosure, I think you can get by now. I don't think this is the example. That's the key point, right? If he learned about it because of reviewing the ALJ hearings, hasn't he learned about it from a source that's, by statutory definition, a public disclosure? Well, he would have learned about it between the QUIC and the ALJ hearings. How do you learn about it between? He would have learned about it in preparing for the ALJ hearings, helping his lawyers prepare for the ALJ process. So something that he worked on in preparation for and part of the ALJ review? Yes, Your Honor. Thank you, Your Honor. All right, thank you.